May it please the court, David Paoli on behalf of the appellant, Robert Schwartz. Good morning. I would ask if I could please have two minutes of my remarks saved so that I could conclude. Several weeks ago, this court kindly informed me that it sought my description and analysis, review, and discussion of Elliott v. Fortas-Benders. And you understand why. I mean, even if you're right about what Judge Haddon did, you may be harmless there because there's a preemption problem. I understand, Your Honor, and that is where my comments will begin. I imagine we'll probably be the middle and probably end there as well. Thank you. As you all know, Elliott v. Fortas is a recent Ninth Circuit case which dealt with Montana's Unfair Trade Practices Act. In that case, the court did a wonderful analysis of the history of preemption. It did an analysis, wonderful I might add, of the Kentucky Association, the two factors to save the UTPA from federal preemption, ERISA preemption rather, but stopped short of making that analysis complete and then leapt, if you will, to implied preemption under Section 1132. The basis of my argument is I do not believe implied preemption carries the day. Are you saying Elliott is wrong? Well, we're bound by Elliott. I mean, it doesn't matter really to us if you give us flowers on Elliott or throw bricks at it. This panel's stuck with Elliott. So how do you distinguish it? Yeah, unless it's distinguishable, we're bought and paid for on that. Your Honor, I understand. I understand also that there's potential for an en banc hearing to reconsider the situation of Elliott v. Fortas Benefits. And that is — and that is — You can preserve that, but we have to follow Elliott. But here's a related question, I guess, for you that maybe gets you past Elliott. I don't recall on Elliott — I don't recall that there's an issue there about a medical malpractice claim. No, there's — Am I right that's not on that case? You're correct. There is not a medical — Here you've got a medical malpractice claim. And also it seemed to me you had some other claims here that were not necessarily benefits claims, fraud claims. So, I mean, aren't those claims not preempted by ERISA? Yes, Judge. So that if that's true, if you're right in that, even if we follow our CA-9 precedent in Fortas, that those claims, those other claims, had a right to go forward unless the district court was correct in his draconian no-amendment theory. Yes, Your Honor, I agree. Those causes of action, I do believe, remain. They are good causes of action, and they are outside of ERISA preemption and the ERISA purview. So in response to Judge Trott's question, I take it you're saying not just you don't like that Fortas case, but you're saying this case is different because of those other claims. That's correct, Your Honor. Probably we shouldn't debate more whether Fortas is right. But assuming those other claims aren't covered by Fortas and aren't preempted, perhaps you could address the amendment issue. Because my view of this, just as one member of the panel, is that the ‑‑ and I want to hear from Appelli on this, but I think the district court was way off the mark in not permitting amendment. And whether reaching the merits, the district court would say there's preemption or not, time would tell. But I would like to see the district court have a chance to rule on that and let you guys argue Fortas to the district court and argue the fraud and argue the medical malpractice and how they come in. So at least as one judge, I'm interested in the amendment issue. I appreciate that, Your Honor. And the jurisdictional issue, the amendment issue, we did make a timely request for amendment. The district court in two other cases that are tab B to our attachments, FMC Leasing Court v. Solomon Financial and Assad v. Pioneer Balloons, the district court judge, in fact, granted leave to amend in very much the exact same situation. And, of course, this court in Snell v. Cleveland addressed this issue with regard to the same district court and the – and eliminating a case. That case was brought here and the failure or the request for amendment was included in that case. And this court determined that leave to amend should have been given to cure the technical deficiency that the district court had identified. And your civil cover sheet filed with your first complaint asserted diversity of citizenship. It did, Your Honor. And asserted the principal place of business of the defendant. That's correct, Your Honor. And then just in your literal complaint itself, you said residency rather than citizenship. We said residency versus citizenship. And in the civil cover sheet, Your Honor, you're correct, we did list the citizenship of Mr. Swartz, which I argued before Judge Haddon should have cured the technical deficiency that he found. Now, you've had an initial scheduling conference with a different district judge, is that right? Yes, Your Honor. This case was filed and it was assigned originally to Judge Malloy in the Missoula Division in the District of Montana. Thereafter, Judge Haddon was appointed and confirmed. And through a restructuring of caseload, this case, it was a Great Falls case. Judge Haddon has chambers in Great Falls. It was assigned to him. When you had that first scheduling conference, Judge Malloy didn't raise any question about jurisdiction. Actually, Judge Malloy specifically raised the question and looked right at defense counsel and asked. But he didn't say there wasn't jurisdiction. No, he did not. And the defense counsel at that conference acknowledged there was jurisdiction. That is correct. Okay. So everybody's sitting there thinking there's jurisdiction. Yes, sir. And then Judge Haddon later, after the 90-day period to add claims or defenses or parties has run, he decides that it's not, jurisdiction's not adequately preceded and you guys are out. That is correct. I believe that order came not even two weeks before we were to argue the summary judgment motions. So the summary judgment motions, which I assume raised issues of a risk of preemption and so on, maybe other issues, but they probably raised that, were never addressed on the merits. That is correct, Your Honor. Are you challenging this as a benefit plan for purposes of ERISA? Yes, we do make that challenge, Your Honor. We claim that this is a MEWA plan, a multiple employer welfare arrangement. That part of the record has not been developed below. But we do believe that it is outside the scope of ERISA as a result of 29 U.S.C. Section 1144B6A, which excludes MEWA plans from the ERISA purview. Assuming that if you prevail on that, you're fine, I guess. But assuming, I mean, you're fine as to the preemption. But assuming that you lose on that, how strong is the authority that, assuming it is an ERISA-type plan, that the medical malpractice claims don't relate to it? In other words, that they wouldn't be preempted? I see your point, Your Honor. And I think that the argument could be made that they are related in that it's the claims handling process. However, I think that medical malpractice has never been taken over by federal ERISA law or any other federal law. To the extent it's an administrative malpractice, that is simply delaying payment, I think that has been taken over, has it not? It's a question of whether your allegations talk both about processing and treatment. It's not clear to me. I mean, this is a pleading case, so I don't know what the treatment side, what Prudential's role would have been in that. Prudential did not have a role in the treatment, but it was integral in the process of speaking with physicians, speaking with his medical care professionals, and in that regard was joined at the hip, if you will, Your Honor, in the medical determinations which then caused Robert Swartz so much problem and the cessation of treatment that he so desperately needed at the time. Treatments, I might add, that were multiple and staged and were cut off as a result of this insurance company's conduct and being involved in the medical care and treatment of this man. I'm just thinking out loud that maybe what we ought to do in this case is if we agree with you on the amendment process is send it back and have the preemption matter hassled out in district court. In your brief, you lump everything under the Montana Unfair Trade Practices Act. You say the case filed asserted the defendant violated Montana's Unfair Trade Practices Act during its handling investigation and judgment of claim for medical expenses, breach of its insurance contract, and acted fraudulently. That sort of gives the impression that everything is under the U.T. Unfair Trade Practices Act. And I apologize if that's the impression that's left, Your Honor. Medical malpractice in Montana is distinctly not under the U.T. That's why I'm saying maybe this ought to go back to sort out this question of Elliott and preemption. That's just thinking out loud. Why don't you save some time? We'll hear from the other side. Thank you, Your Honor. We'll see where we go from there. We've had this. I was on the panel in Snell v. Cleveland, so I'm fully aware of what was going on. May it please the Court. My name is Kendall Gray, and I represent Prudential v. Appley in this case. To sort of play off some of the questions that were asked earlier, really what Prudential's main argument in this case is that this presents an unusual situation where every single legal question is cabined by Ninth Circuit authority so that there's really no question substantial enough that the Court ought to give the district court the first crack at it. Well, do you acknowledge that the district court kind of fell off a cliff in not permitting amendment? Well, and in coming to that question, I'm in somewhat the same position. Just to answer that, could you please answer that first? I'll answer it. I know under the ---- He may be saved by Fortas, but did he make the right ruling on amendment? Under the ---- I think under the standard of review, my position is that the district court can be affirmed. And the answer is this way. In evaluating the district court's ruling, I'm in somewhat the same position as this Court in that I wasn't there in the courtroom. Except you're an advocate. True enough. I wasn't there in the courtroom. I did not see the parties and how they urged their positions and defenses. It doesn't seem to be disputed that the civil cover sheet laid out that there was diverse citizenship and the principal place of business of credential. And so that the only thing was the complaint itself wasn't as artfully pleaded as it should have been. It said residency instead of citizenship. Indeed. But the standard of review for good cause, and I note in preparing for this case that the cases upon which the appellant relies concerning amendments and how to plead diversity of citizenship are in many cases 30 and 40 years old, and so ---- How do you deal with Snell v. Cleveland? Snell v. Cleveland had different ---- Exactly one year old. Right. Snell v. Cleveland had different things, different matters at issue in that what the district court did there was reopen a case that had been settled and sua sponte, reopen a case that wasn't before him, and that was closed and settled. And so not only was there the technicalities similar to what's going on in this case, but there was also in the court specifically referenced society's interest in the finality of litigation in Snell v. Cleveland. That really wasn't the dispositive reason why the case was decided the way it was. I mean, the Ninth Circuit viewed what Judge Haddon did as overreaching. In Snell, I agree with that. That's right. And why is that different in terms of what happened here? It's different. There's a technical problem. Everybody agrees that diversity could be pleaded. And sure, the, you know, the date went by and all the rest. But nevertheless, aren't we supposed to take a reasonable open view of these things and allow the merits of the case to go forward rather than have it fall out on a minor problem like this with a cover sheet? I agree in a sense, and it's distinguishable in these factors. The case in Snell that was reopened was not in front of Judge Haddon. This one was. The case in Snell did not involve whether to amend a scheduling order. This one does. And so really the question is, is there abusive discretion failing to find a cause? But they're not really asking to change the scheduling order. The scheduling order gave 90 days to add a claim, to add a defense, to add a party. They're not asking to add a claim. They're not asking to add a defense. They're not asking to add a party. They just want to correct their pleading of jurisdiction, which it seems that 28 U.S.C. Section 1653 plus Rule 15a of FRCP should encourage. I mean, I'm just kind of excited at the judge's ruling there. And, Your Honor, if you're looking for an unabashed champion of the district court's ruling. But you're going to have to champion it if you want to say it's not an abusive discretion. Right. But under the amendment standard, under the Rule 15 standard that you referenced, the question also arises, was the amendment futile? And that is our position in this case. Okay. That's another issue. That's another issue, whether it's futile. If it's futile because of Fortas v. Elliott, then the district court may get an affirmance that he doesn't, that it doesn't deserve. But it's futile not only under Fortas. But let me explain some other cases that also impact on this. And they're all Ninth Circuit cases. The Court referenced the question of medical malpractice, for instance. If you look at the record as to what the medical malpractice was, it was the kind of administrative malpractice that Your Honor referenced. The only document to which the appellant referred in referring to how did Prudential cancel your treatment, the only document to which he referred was Prudential's explanation of benefits. That's in your – that admission is in the record here. Getting into this level of argument, frankly, I mean, I think it's a legitimate argument. But it's kind of asking us to do the job the district court should have done. I mean, usually when we would assess an issue like that, was medical malpractice properly pleaded in a way that wouldn't be preempted, we'd at least have a district court opinion on the subject. So what's wrong with Judge Trott's tentative suggestion that maybe if we think the merits should have been given, that on the futility issue we just send it back and let the district court do its job to rule on the merits? Because you get a full hearing and your client can say whatever doctrinal theory it's got, and the plaintiff appellant at least gets a chance. Well, under many cases that might be the right thing to do, but my position is it wouldn't be the right thing to do in this case, and here's why. The type of fraud and medical malpractice that's alleged in this complaint is completely cabined in by Ninth Circuit authorities, starting with Greeney, the very same statute, the very same kind of fraud. Also, Spain, Bast, and Perino, the very same kind of medical malpractice. The only thing that Booyah says that if a claim involves a medical decision made in the course of treatment, ERISA does not preempt, okay, and then they plead. We're just going to the pleadings. Medical malpractice says defendant had a duty to provide plaintiff with medical treatment and advice in a careful and prudent manner. Defendant breached this duty and deviated from the applicable standard when they provided plaintiff with medical treatment and advice regarding IVIG treatment. I'm glad you brought up Buie because there's the thing that distinguishes this case square on from Buie, and this is also pleaded in the complaint, is that he was in a traditional insurance product. He was not a member in an HMO, and Prudential does not employ treating physicians. All Prudential, excuse me? How do we know that? Because it's the way it's pleaded. He pleads that he's in a traditional insurance product, and he also pleads that we're not even talking about prospective utilization review or medical necessity review. We're talking about retrospective. He had already had the first treatment when the first review was done. We're talking about traditional indemnity product. That is the grist of a coverage determination. There's really nothing to see here. It's the same kind of determination in the sense of a benefits determination. That was at issue in Bass and Spain and Perino and many others that this Court ---- So Prudential is not responsible for any medical malpractice treatment. It's not responsible for ñ it doesn't treat, period. Period. Yes, period. It doesn't treat, period. It doesn't employ physicians. It doesn't have physician agents. It gives no medical advice. But it can't be ñ the case cannot be a basic medical malpractice claim. There's people on this who rethink it. That's right. And in fact ñ What about the fraud claims? The fraud claims are the same kind of claims that were pleaded in Greeney, which is the first time this Court said that ñ In my case, too. ñ a Montana uniform on deceptive trade practice act claim. It's you told me it was covered and then it wasn't. You told me that you'd do it this way and then you denied it. It's the same kind of claim that was pleaded in Greeney and was preempted. So really, under ordinary circumstances, a remand for development in the district court might be appropriate, but this is not an ordinary case. I realize you need to advocate that on behalf of Prudential, but wouldn't there really be more glory to arguing your case and getting a victory with a district court that fully considered all the arguments, if you want? Well, do you ñ do you ñ I mean, it's not ñ Do you really think it's right for us to make a decision based on even excellent verbal presentations on some of these issues and the briefs when the district court didn't even address the issues? Because I'm really bothered by the idea that we should do the district court's job because the district court thought that it was running a tight ship and made a mistake in not permitting amendment. I understand the question. The court should have permitted amendment and then should have addressed these issues on the merits. And then we'd be reviewing appellate briefs that were focused on whatever the district court said about these issues, which themselves are difficult. Well, I understand the court's position. It certainly may be more glorious to win it twice than to win it once. But from my ñ from my client's point of view, we are an ERISA claims administrator and a fiduciary under the plan. And we, you know, allowed the record to be developed for a year before we even moved for summary judgment. And then we went through discovery battles for six months. The problem is that the ñ as Judge Gould is saying, which I'm sympathetic to, all of that is true. This never came ñ this isn't coming up to us on summary judgment. It's coming up to us on a dismissal for want of jurisdiction. And you're saying then we should now look at the pleadings and decide all of the points on the merits that you think you've labored long and hard for on summary judgment. It's not summary judgment. Well, it's ñ the court does have the power to decide whether the heir will be allowed. You may be right, but again, the reason I brought this up is because all of a sudden this thing has come out of nowhere. We've stumbled into this case. We tell you about it. And we're just hearing an oral argument. Nobody's had really an opportunity to think about it, write briefs, take a close look at it. And your argument may be 100 percent correct, but it's just, you know, back and forth with three appellate judges. And these things are maybe better done in the district court. Now, you could be absolutely right as to who you are and to Graney and all the rest and why medical malpractice doesn't work, period, in this case. You don't treat anybody. You know, you're a provider. But, well, anyway. So just to sum up, we would ask that the court affirm the judgment or affirm the judgment as modified. But alternatively, if the court does think that there is a question that merits development by the district court, we would just instruct ñ request an instruction that the court on remand proceed to rule on the summary judgment on the record that was right before him at the time, fully briefed and under submission at the time and have that final judgment.  And to the point that we're trying to stop the record from being added to. I don't care what's added to the record, because the result's going to be the same. Thank you, counsel. There's a saying put while you're ahead, so you may want to think about that. I appreciate that, Judge Fischer. What I would like to say, though, now that counsel has asked for some direction to the district court, is that, Judge Fischer, specifically on your question about the Miwa plan, that has not been fully developed. The medical malpractice and the situation that this gentleman has expressed to you, that they do not hire, retain, or keep on doctors, that has not been developed. What kind of a medical malpractice claim is this? Did somebody chop off somebody's leg, or is this a screw-up in paperwork, or what? And I don't know that, Judge Trott, and that's the point I'm getting to. We haven't done discovery on that. They come in and file the ---- You don't even know what the claim is? I do know what the claim is, but ---- What's the claim? The claim is a medical malpractice case because they were involved in cutting off his treatment for the IVIG treatment, which then eliminated the staging and really took away his treatment. He didn't get to complete the treatment because of the action that they took, whether it be back somewhere in a corporate office, shuffling paper, I don't know. We haven't been allowed to do discovery on that. And if he's asking for direction to the district court, I would ask for the opportunity to be able to develop this record properly for so the next time, hopefully we don't have to come back, but so that it is full and complete. I appreciate your time. Thank you very much. The case just argued is already submitted. We'll get you a decision pretty quickly on this case. The next case is BC Metal Fabrication versus HACO or HACO. And then ---- Any time now. Go ahead.  Thank you, Your Honor. I'm Dan Lindahl representing the appellant cross appellee HACO NV. This case involves the purchase of a punch press manufactured by HACO and purchased by the plaintiff, BC Metal. There are two principal issues for the Court's decision, one on appeal, one on cross appeal. The principal issue on appeal concerns
judges: Trott, Fisher, Gould